IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| KENNETH BURGESS,<br><br>    Plaintiff,<br><br>v.<br><br>STERLING INFOSYSTEMS, INC.,<br><br>    Defendant. | Case No.:    4:24-06013-SAL<br><br>**JURY TRIAL DEMANDED** |

## **COMPLAINT**

Kenneth Burgess ("Plaintiff" or "Mr. Burgess") by and through his counsel brings the following Complaint against Sterling Infosystems, Inc. ("Defendant" or "Sterling") for violations of the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681, *et seq.*, arising out of an employment background check report that Defendant published to Plaintiff's potential employer, which falsely portrayed Plaintiff as a recently convicted felon.

## **INTRODUCTION**

1. This is an individual action for damages, costs, and attorney's fees brought against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

2. Defendant is a consumer reporting agency that compiles and maintains files on consumers on a nationwide basis. It sells consumer reports generated from its database and furnishes these consumer reports to employers who use the reports to make decisions regarding whether to offer employment to certain consumers.

1

3. Defendant falsely reported to Plaintiff's prospective employer that Plaintiff was convicted of felony domestic violence of a high and aggravated nature. Defendant's reporting is grossly inaccurate and untrue.

4. Plaintiff was not convicted of this felony.

5. Plaintiff's prospective employer denied Plaintiff's job application after receiving an employment background check report from Defendant, which included the inaccurate felony conviction.

6. Defendant's inaccurate reporting could have easily been avoided had Defendant performed a cursory review of the widely available public court records from Chesterfield County, South Carolina regarding the domestic violence offense prior to publishing Plaintiff's report to his prospective employer.

7. Had Defendant performed even a cursory review of the public court records, it would have discovered that Plaintiff has never been convicted of felony domestic violence.

8. Defendant does not employ reasonable procedures to assure the maximum possible accuracy of the information it reports regarding consumers. Defendant's failure to employ reasonable procedures resulted in Plaintiff's report being grossly inaccurate.

9. Defendant committed these violations pursuant to its standard policies and practices, which harm innocent consumers seeking employment by prejudicing their prospective employers with inaccurate criminal record information.

10. Defendant's inaccurate report cost Plaintiff a good paying job and job security.

11. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and

benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

12. As a result of Defendant's conduct, action, and inaction, Plaintiff brings claims against Defendant for failing to follow reasonable procedures to assure maximum possible accuracy based on 15 U.S.C. § 1681e(b) of the FCRA.

## PARTIES

13. Kenneth Burgess ("Plaintiff" or "Mr. Burgess") is a natural person residing in Pageland, South Carolina, and is a "consumer" as that term is defined in 15 U.S.C. § 1681a(c).

14. Defendant Sterling Infosystems, Inc. ("Defendant" or "Sterling") is a Delaware corporation doing business throughout the United States, including the State of California and in this District, and has a principal place of business located at 6150 Oak Tree Blvd Ste 490, Independence, Ohio 44131. Defendant Sterling can be served through its registered agent c/o Paracorp Incorporated located at 2 Office Park Court #103, Columbia, SC 29223.

15. Among other things, Defendant sells background checks to employers for their use in deciding whether to offer employment to prospective employees or to take adverse action such as termination, failure to hire, or failure to promote. These reports are provided in connection with a business transaction initiated by the employer.

16. Defendant is a consumer reporting agency as defined in 15 U.S.C. § 1681a(f) because for monetary fees, it regularly engages in the practice of evaluating and/or assembling

information on consumers for the purpose of furnishing consumer reports for employment purposes to third parties, and uses interstate commerce, including the Internet, for the purpose of preparing and furnishing such consumer reports.

## JURISDICTION AND VENUE

17. This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681p, which allows claims under the FCRA to be brought in any appropriate court of competent jurisdiction.

18. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## STATUTORY BACKGROUND

19. Enacted in 1970, the FCRA's passage was driven in part by two related concerns: first, that consumer reports were playing a central role in people's lives at crucial moments, such as when they applied for a job or credit, and when they applied for housing. Second, despite their importance, consumer reports were unregulated and had widespread errors and inaccuracies.

20. While recognizing that consumer reports play an important role in the economy, Congress wanted consumer reports to be "fair and equitable to the consumer" and to ensure "the confidentiality, accuracy, relevancy, and proper utilization" of consumer reports. 15 U.S.C. § 1681.

21. Congress, concerned about inaccuracies in consumer reports, specifically required consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy" in consumer reports. 15 U.S.C. § 1681e(b).

22. Consumer reports that contain factually incorrect information which does not belong to the consumer at issue are neither maximally accurate nor fair to the consumers who are the subjects of such reports.

### THE FCRA'S PROTECTIONS FOR JOB APPLICANTS

23. Despite its name, the Fair Credit Reporting Act covers more than just credit reporting, it also regulates employment background check reports like the one Defendant prepared in Plaintiff's name.

24. The FCRA provides a number of protections for job applicants who are the subject of background checks for purposes of securing employment, housing, and other purposes.

25. In the parlance of the FCRA, background checks are "consumer reports," and providers of background checks, like Defendant, are "consumer reporting agencies."  15 U.S.C. §§ 1681a(d) and (f).

26. The FCRA imposes duties on consumer reporting agencies to assure that consumer reports are accurate and that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681.

27. Under 15 U.S.C. § 1681e(b), consumer reporting agencies are required "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

28. Defendant disregarded its duties under the FCRA with respect to Plaintiff's background check report.

### DEFENDANT'S ILLEGAL BUSINESS PRACTICES

29. Over the past 15 years, there has been increased collection and aggregation of consumer data, including criminal records and sex offender registration data. As a result of the increasing availability of this data, there has been a boom in the background check industry.

30. As summarized in a recent report by the Consumer Financial Protection Bureau[1], a 2018 survey of employers found that 95 percent of employers surveyed conducted one or more types of background screening. CFPB Report at 4.

31. The criminal background check industry takes in revenues in excess of three billion dollars, annually.

32. Criminal background checks are generally created by running automated searches through giant databases of aggregated criminal record data. The reports are created and disseminated with little to no manual, in-person review, and the underlying court records are rarely directly reviewed in creating criminal background checks.

33. Background check companies, like Defendant, collect millions of criminal records from a number of sources with data from county, state, and federal level sources. The data included on the reports is often not obtained directly from court records on an individual basis but instead is purchased in bulk or scraped from court websites.

34. Given that Defendant is in the business of selling background checks, Defendant should be well aware of the FCRA and the attendant harm to consumers for reporting inaccurate or outdated information.

---

[1] CFPB, Market Snapshot: Background Screening Reports (Oct. 2019), https://files.consumerfinance.gov/f/documents/201909_cfpb_market-snapshot-background-screening_report.pdf ("CFPB Report").

35. Defendant places its business interests above the rights of consumers and reports such inaccurate information because it is cheaper for Defendant to produce reports containing information that is inaccurate and incomplete than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

36. Defendant reports such erroneous and incomplete information because it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the inaccurate or out-of-date entries.

37. Defendant charges its customers the same price for reports that are grossly inaccurate as it does for accurate reports.

38. Appropriate quality control review of Plaintiff's report would have made clear that Defendant was reporting a misdemeanor as a felony.

39. As a provider of background check reports, Defendant should be aware of the FCRA requirements and is a member of the Professional Background Screening Association ("PBSA"). PBSA hosts a conference at least once a year where presenters discuss compliance with federal and state consumer reporting laws.

## FACTS

### Plaintiff Applies for a Job with Martin Amrietta Materials

40. In or around December 2023, Plaintiff applied for full-time employment as a heavy machinery operator with Martin Amrietta Materials.

41. Plaintiff considered the job a huge opportunity for him because he would be working full time and earning $26 per hour.

42. Shortly thereafter, Martin Amrietta Materials extended a job offer to Plaintiff for the position to which he applied. The job offer was conditioned upon Plaintiff passing a drug test (which he passed) and a background check ("consumer report.")

43. Plaintiff was given a tentative start date of January 8, 2024.

44. This start date had to be moved around three times as the background check took longer than Martin Amrietta Materials or Plaintiff expected.

45. On or about January 22, 2024, Plaintiff was forced to take a different lower-paying job in the interim ($18 per hour) as he couldn't afford to be without work any longer, especially with the uncertainty of his start date continually being moved forward.

46. Plaintiff considered this job as temporary and he was planning to take the Martin Amrietta Materials job as soon as his background check cleared.

**Defendant Published an Inaccurate Background Check Report to Martin Amrietta Materials**

47. Martin Amrietta Materials contracted with Defendant to conduct background checks, including criminal background checks, on its prospective employees.

48. On or about December 15, 2023, Martin Amrietta Materials ordered a criminal background check on Plaintiff from Defendant.

49. On or about February 14, 2024, in accordance with its standard procedures, Defendant completed its consumer report about Plaintiff and sold the same to Martin Amrietta Materials.

50. Within that consumer report, Defendant published inaccurate information about Plaintiff.

51.     Specifically, Defendant's consumer report about Plaintiff included a grossly inaccurate and stigmatizing felony domestic violence conviction from Chesterfield County, South Carolina which appeared in the consumer report as follows:

**Charges**

| | |
|---|---|
| Type | Felony |
| Original Charge | Domestic Or Domestic Violence Of A High And Aggravated Nature |
| Disposition | Guilty |

| | |
|---|---|
| Case Number | CHE00219 |
| Last Name | Burgess |
| First Name | Kenneth |
| DOB | XXXX-07-01 |

Case Comments

```
Sentences:
Type: Fine
Suspended: No
Fine Amount: $133.90
-----------
```

| | |
|---|---|
| Case Type | Conviction |
| Case Level | Felony |
| Filed Date | 2014-03-27 |
| Disposition Date | 2014-08-11 |

52.     The felony domestic violence conviction reported by Defendant about Plaintiff is inaccurate.

53.     Plaintiff was not convicted of this felony.

54.     A cursory review of the widely available public court records confirms that Plaintiff never pled guilty to or was convicted of felony domestic violence of a high and aggravated nature.

Rather, the public record confirms that Plaintiff only ever pleaded to non-violent *misdemeanor* second degree domestic violence, South Carolina CDR Code # 3812.

55. The sole reason the inaccurate felony conviction was reported as belonging to Plaintiff was that Defendant failed to follow reasonable procedures to assure the maximum possible accuracy of the information it published within the consumer report it sold about Plaintiff to Plaintiff's prospective employer.

56. Had Defendant followed reasonable procedures, it would have discovered that Plaintiff has never been convicted of felony domestic violence of a high and aggravated nature and that it should not have reported the same.

57. In preparing and selling a consumer report about Plaintiff, wherein Defendant published to Plaintiff's prospective employer inaccurate information about Plaintiff, Defendant failed to follow reasonable procedures to assure that the report was as accurate as maximally possible, in violation of 15 U.S.C. § 1681e(b).

**Martin Amrietta Materials Denies Plaintiff's Job Application**

58. On or about February 22, 2024, Plaintiff was notified by Martin Amrietta Materials that his employment application was denied as a direct result of the felony conviction within the last seven years reported by Defendant.

59. Shortly thereafter, Plaintiff obtained a copy of the subject consumer report and was shocked upon reviewing the felony domestic violence of a high and aggravated nature conviction contained within the subject consumer report.

60. Plaintiff contacted Martin Amrietta Materials and informed them the case was a misdemeanor, not a felony.

61. Plaintiff was very panicked, confused, and concerned about the impact of the inaccurate reporting that he was a recently convicted felon, both in relation to the Martin Amrietta Materials position, but also the impact of the same on his future.

62. Specifically, Defendant reported a felony domestic violence of a high and aggravated nature conviction that is clearly labeled in the underlying court records as a *misdemeanor*. The underlying court records were available to Defendant prior to publishing Plaintiff's consumer report to Martin Amrietta Materials, but Defendant failed to obtain or perform even a cursory review of such information.

### Plaintiff Disputed the Misinformation in Defendant's Consumer Report

63. On February 22, 2024, desperate to secure employment with Martin Amrietta Materials and riddled with worry over the far-reaching impacts of the inaccurate information, Plaintiff disputed the inaccurate information with Defendant. Plaintiff disputed via telephone and email with Defendant.

64. Plaintiff identified himself and provided information to Defendant to support his dispute.

65. Plaintiff specifically disputed the inaccurate reporting of a **felony** conviction that should have been reported as a misdemeanor.

66. Plaintiff specifically asked Defendant to investigate and correct its reporting in any consumer report about Plaintiff.

67. On March 19, 2024, Plaintiff received Defendant's correspondence confirming that it had reinvestigated Plaintiff's dispute and conceding its inaccurate reporting by correcting the reporting of the criminal record from *felony* to misdemeanor.

11

68. Defendant also communicated to Plaintiff that it had issued a corrected consumer report to Martin Amrietta Materials.

69. Plaintiff continued to follow up with Martin Amrietta Materials via calls and emails in hopes that the job offer would be reinstated; however, Martin Amrietta Materials never responded to Plaintiff and did not renew its job offer.

70. Plaintiff reasonably believes that due to Defendant's inaccurate reporting in the first instance, Martin Amrietta Materials formed a negative opinion about Plaintiff and/or moved on to other candidates.

71. Defendant's false report cost Plaintiff a promising, well-paying job with Martin Amrietta Materials.

72. The position with Martin Amrietta Materials was a big opportunity for Plaintiff as it was full-time and Plaintiff was set to earn $26.00 per hour.

73. The injuries suffered by Plaintiff as a direct result of Defendant's erroneous reporting are the type of injuries that the FCRA was enacted to address. Under common law, Defendant's conduct would have given rise to causes of action based on defamation and invasion of privacy.

74. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep;

lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

## CLAIMS FOR RELIEF

### COUNT I
### 15 U.S.C. § 1681e(b)
### Failure to Follow Reasonable Procedures to Assure Maximum Possible Accuracy

75. Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully stated herein.

76. Defendant is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

77. At all times pertinent hereto, Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

78. At all times pertinent hereto, the above-mentioned consumer report was a "consumer report" as that term is defined by 15 U.S.C. § 1681a(d).

79. Defendant violated 15 U.S.C. § 1681e(b) by failing to establish or to "follow reasonable procedures to assure maximum possible accuracy" in the preparation of the consumer report it sold about Plaintiff as well as the information it published within the same.

80. As a result of Defendant's violations of the FCRA, Plaintiff has suffered a range of actual damages including, without limitation, loss of employment opportunities, wages, and benefits; loss of economic opportunities and positions and advancements in the future; loss of time and money trying to correct his background check report; the expenditure of labor and effort disputing and trying to correct the inaccurate reporting; damage to his reputation; loss of sleep; lasting psychological damage; loss of capacity for enjoyment of life; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment.

81. Defendant willfully violated 15 U.S.C. § 1681e(b) in that its conduct, actions, and inactions were willful, rendering them liable for actual or statutory damages, and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Alternatively, they were negligent, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

82. Plaintiff is entitled to recover statutory damages, punitive damages, and reasonable attorneys' fees and costs from Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or § 1681o.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for the following relief:

i. Determining that Defendant negligently and/or willfully violated the FCRA;

ii. Awarding Plaintiff actual, statutory, and punitive damages as provided by the FCRA;

iii. Awarding Plaintiff reasonable attorneys' fees and costs as provided by the FCRA; and,

iv. Granting further relief, in law or equity, as this Court may deem appropriate and just.

### DEMAND FOR JURY TRIAL

Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

RESPECTFULLY SUBMITTED this 22nd day of October 2024.

*/s/ Dawn McCraw*
Dawn McCraw (SCB #105059)
Consumer Attorneys
8095 N 85th Way
Scottsdale, AZ 85258
T: (602) 807-1527
F: (718) 715-1750
E: dmccraw @ consumerattorneys.com

*Attorneys for Plaintiff
Kenneth Burgess*